**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 19, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

ANTONIO ROBERTSON,

    Defendant-Appellant.

No. 08-3126

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 2:07-CR-20153-KHV)**

---

Terrence J. Campbell, Barber Emerson, L.C., Lawrence, Kansas, for Defendant-Appellant.

Leon Patton, Assistant United States Attorney (Marietta Parker, Acting United States Attorney, with him on the briefs), Kansas City, Kansas, for Plaintiff-Appellee.

---

Before **O'BRIEN** and **BALDOCK**, Circuit Judges, and **BRORBY**, Senior Circuit Judge.

---

**BALDOCK**, Circuit Judge.

---

A report of suspected drug-dealing activity led police officers to an intersection in Kansas City, Kansas at which they found Defendant Antonio Robertson and another individual standing outside a parked car. Upon observing an unknown party leaving the area in a Ford Explorer, officers executed a stop of the

vehicle and obtained a small baggie of marijuana from its driver.

For safety purposes, officers ordered Defendant and his companion to stand against a wall, while they assessed the situation. Defendant subsequently engaged in a conversation on his cell phone and repeatedly walked away from the wall. After multiple warnings, officers decided to arrest Defendant for obstruction, but when they attempted to handcuff Defendant he pulled away, revealing a pistol in his waistband. Eventually officers managed to handcuff Defendant and recover the gun, which turned out to have been stolen during a residential burglary. Police also uncovered a bottle of phencyclidine or PCP on Defendant's person. Federal agents later discovered, through a records check, that Defendant had several prior felony convictions.

A grand jury ultimately indicted Defendant for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and Defendant pled guilty, pursuant to a written plea agreement. Departing upward from the recommended Guidelines range of 18 to 24 months, the district court sentenced Defendant to 41 months' imprisonment. See United States v. Sells, 541 F.3d 1227, 1237 n.2 (10th Cir. 2008) (explaining that a "departure" occurs when a district court reaches a sentence above or below the recommended Guidelines range through the application of Chapters Four and Five of the Sentencing Guidelines, whereas a "variance" occurs when a district court reaches a sentence that differs from the recommended Guidelines range through the application of the factors outlined in 18 U.S.C. § 3553(a)). On appeal,

2

Defendant disputes the reasonableness of that sentence. Exercising jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, we affirm.

I.

We begin with a brief summary of the Presentence Report (PSR) and the district court's rationale for imposing a 41-month sentence. Calculating Defendant's total offense level at 13 and his criminal history category at III, the PSR adopted a recommended Guidelines range of 18 to 24 months' imprisonment. The PSR noted, however, that the "nature of the defendant's offense, his prior arrests involving the use of firearms, his substance abuse history with PCP, and his high risk to recidivate" could present grounds for an upward departure under United States Sentencing Guidelines (U.S.S.G.) § 4A1.3.

A.

According to the PSR, Defendant's criminal history began at age 14 and spanned, at the time of his arrest, approximately half of his 29 years of life. Most of Defendant's criminal convictions involved drugs or guns. Parole records revealed multiple instances in which Defendant's probation was revoked. The PSR also noted that the Government was compelled to dismiss multiple charges against Defendant because key prosecution witnesses failed to appear. Two of these charges largely precipitated the district court's upward departure in this case and are thus central to the resolution of this appeal.

At age 20, Defendant was charged with Criminal Discharge of a Firearm at an

3

Occupied Dwelling. On that occasion Defendant drove to a Kansas City residence with an individual known as JJ, threatened its occupants, and proceeded to shoot randomly at the house — as well as a vehicle entering the driveway — with a semi-automatic handgun. Defendant continued to fire shots in several directions while exiting the scene. Seven years later, Defendant was charged with Criminal Discharge of a Firearm at an Occupied Vehicle. This time Defendant and JJ drove behind a vehicle with two passengers and fired shots into the car, causing the driver to strike and injure the occupants of a third vehicle. As his targets fled the scene on foot, Defendant again opened fire.

### B.

At sentencing, the district court inquired whether Defendant or the Government had any objections to the PSR, which contained the foregoing description of Defendant's criminal past. Transcript of Sentencing Proceedings of May 5, 2008 (Sentencing Transcript) at 2-3. No objection was forthcoming, which led the district court to consider Defendant's and the Government's request that it impose a sentence at the low end of the 18 to 20 month Guidelines range.[1] See id. at 2-3, 12. Almost immediately, the district court put the parties on notice that it was inclined to upwardly depart from the recommended Guidelines range based on § 4A1.3(a) of the Guidelines. See id. at 3-4. Section § 4A1.3(a) allows for upward

---

[1] In exchange for Defendant's guilty plea, the Government agreed to recommend a sentence at the low end of the applicable Guidelines range.

departures in cases in which a defendant's criminal history category either substantially under-represents the seriousness of his criminal history or the likelihood that he will commit other crimes.

The district court first listened to Defendant's and his counsel's response. It then explained, as follows, why it continued to believe an upward departure was appropriate:

> You know, I realize that your life started . . . with a lot of problems and you didn't have good supervision from parents and sort of got off on the wrong track. But I'm also looking at this record which shows that you have a long history of carrying weapons, using weapons in a violent way. Basically, you've got a history of drug use, you've got [a] serious past criminal record, and you haven't performed well under supervision.
>
> It looks to me when I look at all of the factors contained, that you have a very high likelihood of committing other crimes and that you haven't been punished by the Courts in a way that's caused you to really take stock of where your life is going and make any serious effort to get your life on a different track.
> . . .
> [Paragraphs] 48 and 50 [of the PSR] I think it was — yes, the victims failed to appear. Those were criminal discharge of a firearm at an occupied dwelling and criminal discharge of a firearm in a occupied vehicle. One of those was only three years ago.
> . . .
> And, you know, I'm going to give counsel an opportunity to comment on this, but it does appear to me that when you look at . . . all of the circumstances, that the defendant's criminal history category does not adequately reflect the seriousness of his entire past criminal record or the likelihood that he will commit other crimes.
>
> And even though he's in a criminal history category of 3, the record here more closely resembles what I

5

typically see in a criminal history category of 6. If we were to sentence him under that kind of guidelines scheme, the sentence we would be looking at would be in the guideline range of 33 to 41 months instead of 18 to 24.

Id. at 13-16. In reply, defense counsel implored the district court not to consider the charges dismissed against his client, citing the fact that Defendant had "never been proven guilty of those offenses." Id. at 16. But counsel acknowledged that if Defendant had been convicted of discharging a firearm at an occupied dwelling and vehicle, his criminal history category would have been VI. See id.

Despite counsel's protestations the district court remained convinced that an upward departure was appropriate and it, accordingly, proposed a sentence of 41 months' imprisonment followed by three years of supervised release. See id. at 18. In the district court's view, Defendant's extensive criminal history and poor performance on probation were not adequately represented by a criminal history category of III. A much better match, in its mind, was a criminal history category of VI, as the district court illustrated:

> [D]efendant's criminal behavior started at age 14; he's presently 30 years old. He has a consistent history of carrying weapons; this is his sixth arrest involving firearms. He has two prior arrests involving firearms that were violent in nature. He's relied on drug distribution as a means for supporting himself. He has a history of committing new offenses and using drugs on supervision. And I don't believe that his criminal history category adequately reflects the seriousness of his criminal record or the likelihood that he will commit another [sic] crimes.
> Therefore, the Court intends to depart upward and finds the criminal history category which more closely —

6

most closely resembles that of this defendant is a criminal history category of 6, which with a total offense level . . . of 13, would put him in a custody range of 33 to 41 months.

I believe that a sentence at [that] level of the guidelines more appropriately addresses all of the sentencing factors contained in Section 3553(a)(2) because it more adequately reflects the seriousness of your offense, promotes respect for the law, provides just punishment, and protects the public, most importantly, from further crimes by you.

Id. at 17-18. After Defense counsel referenced his previous objections, the district court found that the PSR was accurate and incorporated its findings into the court's ruling. See id. at 20-21. The district court then sentenced Defendant to 41 months' incarceration, followed by three years of supervised release. See id. at 21.

II.

Before we reach the merits of Defendant's sentencing challenge, we must address our standard of review. Defendant's only objection at his sentencing hearing was to the district court's consideration of unconvicted conduct. Consequently, the Government contends that plain error review applies to any additional procedural errors Defendant raises on appeal. See United States v. Martinez, 512 F.3d 1268, 1275 (10th Cir. 2008) (recognizing that a challenge to a district court's departure decision amounts to a claim of procedural error). For his part, Defendant argues that his request for a sentence within the suggested Guidelines range preserved every

7

aspect of the district court's upward departure for our review.[2]  We think the

Government has the better of this argument.

Fairness and judicial efficiency demand that litigants notify the district court

of a procedural sentencing error with reasonable specificity, thereby providing that

court the opportunity to correct its action in the first instance.  See United States v.

Uscanga-Mora, 562 F.3d 1289, 1294 (10th Cir. 2009); United States v. Winder, 557

F.3d 1129, 1136 (10th Cir. 2009).  When alerted to a possible error, the district court

may often remedy potential problems "easily and quickly."  Uscanga-Mora, 562 F.3d

at 1294.  Otherwise, the parties and the courts waste substantial resources shuttling

cases "back and forth between the district court and court of appeals" in situations

where a minor correction would have completely obviated the need for an appeal.

Id.; see also United States v. Dominguez Benitez, 542 U.S. 74, 82 (2004) (noting that

plain error review "reduce[s] wasteful reversals").

Unnecessary reversals based on procedural errors are of particular concern

---

[2]  Defendant points us to multiple cases recognizing that a unitary abuse of discretion standard governs our review of a district court's decision to upwardly depart.  See, e.g., United States v. Munoz-Tello, 531 F.3d 1174, 1186 (10th Cir. 2008).  But, contrary to Defendant's assertions, the fact that we employ a unitary abuse of discretion standard in these circumstances does not preclude the application of plain error review.  After United States v. Booker, 543 U.S. 220 (2005), for example, we review all sentencing decisions for an abuse of discretion.  See United States v. Huckins, 529 F.3d 1312, 1317 (10th Cir. 2008).  Yet, ordinary prudential doctrines — including the plain error test — continue to apply.  See Booker, 543 U.S. at 268 ("[W]e expect reviewing courts to apply ordinary prudential doctrines, determining, for example, whether the issue was raised below and whether it fails the 'plain-error' test.").

given district courts' enhanced sentencing discretion post-United States v. Booker, 543 U.S. 220 (2005). See United States v. Allen, 488 F.3d 1244, 1260 n.6 (10th Cir. 2007) (citing United States v. Wolfe, 435 F.3d 1289, 1296 (10th Cir. 2006)). The rationale of the plain error rule thus clearly applies here. Moreover, the substantial benefits the judicial system "derives from a contemporaneous objection" in the sentencing context outweighs the "modest burden such a requirement imposes on counsel." Uscanga-Mora, 562 F.3d at 1294. We, consequently, agree with several of our sister circuits that plain error review generally applies to unpreserved procedural errors that arise in the context of a district court's departure from the recommended Guidelines range.[3] See, e.g., United States v. Walking Eagle, 553 F.3d 654, 657 (8th Cir. 2009); United States v. King, 454 F.3d 187, 193 (6th Cir. 2006); United States v. Maurice, 69 F.3d 1553, 1556-57 (11th Cir. 1995).

Requiring a contemporaneous objection to alleged procedural errors in the sentencing context finds ample support in our precedents. See Uscanga-Mora, 562 F.3d at 1293 (providing examples). We have "consistently held" that "plain error review obtains when counsel fails to render a contemporaneous objection" to a

---

[3] Plain error review only applies in instances in which a defendant has "been given, but has not taken advantage of, an opportunity to voice his or her objection." Uscanga-Mora, 562 F.3d at 1294 (citing Fed. R. Crim. P. 51(b)) (emphasis omitted). If no such opportunity has been given, or raising an objection would clearly have been futile, our normal standard of review applies. See id. In this case, the district court provided Defendant with multiple opportunities to raise objections and every indication suggests the court was ready and willing to address Defendant's concerns.

9

procedural sentencing error.[4] Id. Indeed, our cases addressing the procedural reasonableness of sentences promulgated under 18 U.S.C. § 3553(a), and various sections of the Guidelines, have routinely required defendants to specifically object to a procedural error in order to preserve that issue for our review. See, e.g., Uscanga-Mora, 562 F.3d at 1292-93 (U.S.S.G. § 3B1.1(c)); United States v. Wilken, 498 F.3d 1160, 1174 (10th Cir. 2007) (U.S.S.G. § 4B1.1); United States v. Romero, 491 F.3d 1173, 1176 (10th Cir. 2007) (18 U.S.C. §§ 3553(a) & (c)); United States v. Lopez-Flores, 444 F.3d 1218, 1221 (10th Cir. 2006) (18 U.S.C. § 3553(a)).

Defendant has presented us with no viable justification for exempting procedural errors related to Guidelines departures from this general requirement. See Uscanga-Mora, 562 F.3d at 1293-94. Accordingly, unless Defendant lodged a specific objection to a procedural error at sentencing, our review is limited to plain error. Under that standard, we may reverse only if a defendant demonstrates an error that is plain, which not only prejudices his substantial rights, but also seriously affects the fairness, integrity, or public reputation of judicial proceedings. See

---

[4] See, e.g., United States v. Mendoza, 543 F.3d 1186, 1191 (10th Cir. 2008) ("A party must specifically object to the district court's procedure in order to preserve that issue for review."); United States v. Romero, 491 F.3d 1173, 1178 (10th Cir. 2007) ("[B]ecause Romero did not object on procedural grounds under § 3553(a) or (c) . . . he has forfeited his right to appeal this issue and our review is only for plain error."); United States v. Ruiz-Terrazas, 477 F.3d 1196, 1199 (10th Cir. 2007) ("Because Mr. Ruiz-Terrazas did not object to the procedure by which his sentence was determined and explained, we may reverse the district court' judgment only in the presence of plain error.").

United States v. Rivas-Macias, 537 F.3d 1271, 1281 (10th Cir. 2008).

## III.

We now proceed to the merits of Defendant's appeal. While some circuits regard the Guidelines' departure provisions as superfluous post-Booker, we have steadfastly upheld their vitality and instructed district courts to continue to apply them in "appropriate cases."[5] United States v. Sierra-Castillo, 405 F.3d 932, 936 n.2 (10th Cir. 2005); see also United States v. Alapizco-Valenzuela, 546 F.3d 1208, 1215 (10th Cir. 2008). Indeed, we have concluded not only that the Guidelines departures "survive Booker," see United States v. Calzada-Maravillas, 443 F.3d 1301, 1305 (10th Cir. 2006), but also that our pre-Booker cases provide "the standard for when to depart from the recommended [Guidelines] range." United States v. Martinez-Barragan, 545 F.3d 894, 900 (10th Cir. 2008). Our analysis of the propriety of an upward departure is consequently guided by the traditional four-part test, which inquires (1) whether the district court relied on permissible departure factors,

---

[5] Compare United States v. Mohamed, 459 F.3d 979, 985-87 (9th Cir. 2006) (concluding that after Booker the Guidelines' departure provisions are obsolete); United States v. Arnaout, 431 F.3d 994, 1003 (7th Cir. 2005) (same), with United States v. Jackson, 467 F.3d 834, 838-39 (3d Cir. 2006) (affirming the post-Booker vitality of the Guidelines' departure provisions); United States v. Dixon, 449 F.3d 194, 203-04 (1st Cir. 2006) (same); United States v. Moreland, 437 F.3d 424, 433 (4th Cir. 2006) (same); United States v. McBride, 434 F.3d 470, 476 (6th Cir. 2006) (same); United States v. Hawk Wing, 433 F.3d 622, 631 (8th Cir. 2006) (same); United States v. Selioutsky, 409 F.3d 114, 118 (2d Cir. 2005) (same); United States v. Sierra-Castillo, 405 F.3d at 936 n.2 (same); United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005) (same).

11

(2) whether those factors removed a defendant from the applicable Guidelines heartland, (3) whether the record supports the district court's factual bases for a departure, and (4) whether the degree of departure is reasonable. See United States v. Munoz-Tello, 531 F.3d 1174, 1186 (10th Cir. 2008).

Defendant, in this appeal, challenges the district court's departure analysis at every stage of this four-part framework. Our analysis of Defendant's preserved errors proceeds under a "unitary abuse of discretion standard," which affords substantial deference to "factual questions," but allows for "plenary review of questions that are in essence legal." Alapizco-Valenzuela, 546 F.3d at 1215-16; see also United States v. Whiteskunk, 162 F.3d 1244, 1249 (10th Cir. 1998). To prevail on unpreserved claims, however, Defendant must clear the more arduous hurdles set by the plain error test. See United States v. Toro-Pelaez, 107 F.3d 819, 827 (10th Cir. 1997). We will now address, with these standards in mind, each of Defendant's contentions in turn.

A.

Pointing to the district court's focus on conduct involving firearms for which he was arrested but never convicted, Defendant questions the propriety of the factors the district court relied upon in reaching its decision to upwardly depart. Because Defendant objected on this ground at his sentencing hearing, our review is for an abuse of discretion. We conclude Defendant's unconvicted conduct provided the district court with an appropriate grounds for departure under U.S.S.G.

12

§ 4A1.3(a)(2)(E).

The goal of every sentencing proceeding is to fashion an individualized sentence that accounts for the unique facts of each case, which sometimes mitigate and sometimes magnify the crime and thus the ensuing punishment. See Whiteskunk, 162 F.3d at 1252. In keeping with this essential purpose, the Sentencing Commission included flexibility in the Guidelines framework to accommodate "unusual cases outside the range of the more typical offenses for which the [G]uidelines were designed." Id. Thus, even under the Guidelines, district courts possess substantial discretion to fashion an appropriate sentence by departing from the prescribed sentencing range. See United States v. Jackson, 921 F.2d 985, 991 (10th Cir. 1990) (en banc). We have, for example, acknowledged that district courts may, in appropriate cases, upwardly depart based on reasons not specifically listed in the Guidelines. See, e.g., United States v. Concha, 294 F.3d 1248, 1252 n.4 (10th Cir. 2002); United States v. Stumpf, 938 F.2d 172, 174 (10th Cir. 1991). But, happily for us, nothing so remarkable is at issue here, as the district court predicated its upward departure on grounds specifically contemplated by the Guidelines.

Section 4A1.3(a)(1) of the Guidelines allows for upward departures where reliable information indicates a defendant's criminal history category substantially under-represents either the seriousness of a defendant's criminal history, or the likelihood that he will commit additional crimes. See United States v. Akers, 215

13

F.3d 1089, 1105 (10th Cir. 2000).  One example of "reliable information" justifying

such a departure is prior, adult, unconvicted conduct that is similar in nature to the

instant offense.  See U.S.S.G. § 41A.1(a)(2)(E).  Defendant does not contest that

prior, similar, adult, criminal conduct "may provide a valid basis for an upward

departure to a higher criminal history category."  United States v. Flinn, 987 F.2d

1497, 1500 (10th Cir. 1993).  Rather, he argues the district court erroneously relied

on his arrest record in reaching its decision to upwardly depart.  See U.S.S.G.

§ 4A1.3(a)(3) ("A prior arrest record itself shall not be considered for purposes of

an upward departure . . . .").

Defendant is, of course, correct that the mere fact that he was arrested for

certain crimes relating to the illegal use of a firearm could not serve as valid grounds

for an upward departure under § 4A1.3(a).  See id.  But nothing in the Guidelines

excludes the district court from considering the conduct underlying those arrests and

it is Defendant's violent conduct, not his arrest record itself, which spurred the

district court to upwardly depart from the recommended Guidelines range.[6]  To be

_____

[6] See, e.g., United States v. Matheny, 450 F.3d 633, 642 (6th Cir. 2006) ("We agree with our sister circuits that district courts may consider prior arrest records only when the PSR provides specific facts surrounding the arrest."); United States v. Hawk Wing, 433 F.3d 622, 628 (8th Cir. 2006) ("[W]e and other circuits have held that the PSR must . . . provide specific facts underlying the arrests in order for the arrest record to justify an upward departure; otherwise, the district court may not rely on a mere record of arrest."); United States v. Dixon, 318 F.3d 585, 591 (4th Cir. 2003) (noting that "a district court must rely on the facts underlying the arrests," rather than the "prior arrest record itself"); United States v. Miller, 263 F.3d 1, 4 n.3
(continued...)

14

clear, all that is precluded from consideration by § 4A1.3(a)(3) is a district court's reliance "on bare reports of prior arrests." United States v. Berry, 553 F.3d 273, 281 (3d Cir. 2009). The facts underlying those arrests are fair game. See United States v. Fuller, 15 F.3d 646, 651 (7th Cir. 1994). In this case, Defendant's PSR recounted the factual bases for his arrests for Criminal Discharge of a Firearm in some detail and the district court was free to rely on these facts to depart upward under § 4A1.3(a)(2)(E). See United States v. Mateo, 471 F.3d 1162, 1167 (10th Cir. 2006).

Defendant also contends that the district court erred in considering the nature of the instant offense, i.e. that it involved a firearm, in departing upward from the recommended Guidelines range.[7] We note that, contrary to Defendant's apparent assumption, not every consideration of an improper, departure factor necessitates a remand. See Williams v. United States, 503 U.S. 193, 203 (1992) ("[I]n determining whether a remand is required . . . a court of appeals must decide whether the district court would have imposed the same sentence had it not relied upon the invalid factor or factors."). But in this case such considerations are immaterial as the district court's reflection upon the nature of Defendant's current offense was appropriate,

_____

[6](...continued)
(2d Cir. 2001) (explaining that § 4A1.3(a)(3)'s prohibition on the consideration of arrest records "does not, of course, mean that the conduct underlying such arrests may not be considered"); United States v. Fuller, 15 F.3d 646, 651 (7th Cir. 1994) ("[D]istrict courts may not rely on defendants' prior arrest records . . . but rather must rely on the facts underlying the arrests.").

[7] Because Defendant failed to raise this argument in the district court, our review is for plain error. In this instance, we identify no error, plain or otherwise.

15

if not required.

An upward departure under § 4A1.3(a)(2)(E) is only befitting if a defendant's prior, adult, criminal conduct is sufficiently similar to that underlying the instant offense. See United States v. Ramirez, 11 F.3d 10, 13 (1st Cir. 1993); see also United States v. Bridges, 175 F.3d 1062, 1072 (D.C. Cir. 1999) (noting that U.S.S.G. § 4A1.3 directs district courts "to determine not whether the defendant's 'offenses' are similar but whether his 'conduct' is"). Comparisons between the facts underlying the current offense and a defendant's prior conduct are inevitable under this standard, as the Guidelines' rationale for recidivist departures rests on the connection between the conduct underlying a defendant's current and past offenses.[8] See United States v. Mentzos, 462 F.3d 830, 841 (8th Cir. 2006). Indeed, relapsing "into the same criminal behavior" is only particularly blameworthy because it demonstrates a defendant lacks "recognition of the gravity of his original wrong," thus entailing

---

[8] As our sister circuit explained:

> "[An upward] departure is warranted when the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes. The accuracy of such a prediction about future behavior can only be enhanced by permitting the court to compare past offenses to exactly what it is the defendant has just done . . . . A judge with such license is surely more likely to be able to discern a pattern in a defendant's behavior than one who must peer with blinders on."

Bridges, 175 F.3d at 1072 (citations and emphasis omitted).

16

"greater culpability for the offense with which he is currently charged," and suggesting "an increased likelihood that the offense will be repeated yet again." United States v. Jackson, 903 F.2d 1313, 1320 (10th Cir. 1990) (quoting United States v. DeLuna-Trujillo, 868 F.2d 122, 125 (5th Cir. 1989)). We, therefore, reject Defendant's contention that the district court's consideration of the conduct underlying his current offense was somehow improper. See United States v. Dixon, 318 F.3d 585, 590-91 (4th Cir. 2003).

B.

Defendant also challenges the district court's conclusion that unique factors removed his case from the applicable Guidelines heartland. Because Defendant failed to lodge a contemporaneous objection on this ground at sentencing, plain error review applies. We are unable to locate any such error. Under the facts of this case, the district court was well within the bounds of its discretion in determining that Defendant's criminal history and propensity to recidivate placed him outside the "'heartland' of typical cases considered by the Sentencing Commission when it drafted the Guidelines." Martinez-Barragan, 545 F.3d at 900.

Substantial deference is due the district court's determination that unique factors place a defendant outside of the Guidelines heartland. See United States v. Proffit, 304 F.3d 1001, 1011 (10th Cir. 2002); United States v. Walker, 284 F.3d 1169, 1172 (10th Cir. 2002). We take due account of the district court's "institutional advantage" in making "these sorts of determinations," United States

17

v. Shumway, 112 F.3d 1413, 1427 (10th Cir. 1997), and limit our review "to determining whether the factual circumstances from the vantage point of the district court make this the atypical case." Proffit, 304 F.3d at 1011. This standard accounts for the district court's "extensive experience in applying the Guidelines," a familiarity we lack. Shumway, 112 F.3d at 1427.

Here, the district court regarded Defendant's unconvicted conduct involving firearms — some of it remarkably violent — as giving him greater culpability for being a felon in possession of a firearm than a defendant in the run-of-the-mill case. See Munoz-Tello, 531 F.3d at 1190 (recognizing that an upward departure may be predicated on a district court's "concern for human safety and the sanctity of life"). The district court also suggested that Defendant's long criminal history and poor performance on probation demonstrated a marked recidivist intransigence that required firm correction. See United States v. Goings, 200 F.3d 539, 542 (8th Cir. 2000) (allowing district courts to account for "a heightened need for deterrence," "evidence of obvious incorrigibility," and the fact that "leniency has not been effective"). We cannot say that, in so ruling, the district made a "clear error of judgment" or "exceeded the bounds of permissible choice in the circumstances." Whiteskunk, 162 F.3d at 1253.

C.

With an eye to the sufficiency of the evidence establishing the conduct which underlay his arrests for Criminal Discharge of a Firearm, Defendant disputes the

18

district court's assumption that he was guilty of these misdeeds. We construe this argument as a claim that the factual bases for the district court's departure decision are not adequately supported by the record. Although we are willing to assume that Defendant's objection to the district court's consideration of unconvicted conduct preserved this issue for our review, the relief Defendant seeks will not spring from this fallow ground.

We recognize that the only evidence in the record in support of the district court's factual findings was the PSR, which provided a summary of the conduct underlying Defendant's arrests. See Wolfe, 435 F.3d at 1299. But Defendant never objected to the PSR's factual contentions. See id. Our precedent is clear that, outside the Booker context, district courts are free to accept "uncontested facts contained in the PSR" for purposes of sentencing. Mateo, 471 F.3d at 1166; see also United States v. Harris, 447 F.3d 1300, 1306 (10th Cir. 2006); Wolfe, 435 F.3d at 1299. A contrary conclusion is precluded by Federal Rule of Criminal Procedure 32(i)(3)(A), which expressly allows district courts to "accept any undisputed portion of the presentence report as a finding of fact." See Wolfe, 435 F.3d at 1299. Defendant's contention that the district court lacked an adequate basis in the record for departing on its chosen grounds is, consequently, without merit.

D.

Finally, we address Defendant's claim that the district court failed to adequately explain the reasons for its three-level upward departure. Defendant did

19

not object to the district court's explanation for its departure decision at sentencing. We, accordingly, review only for plain error.

A district court's decision to depart from the Guidelines is normally entitled to "substantial deference." United States v. Goldberg, 295 F.3d 1133, 1138 (10th Cir. 2002). But that deference has limits. District courts must expressly articulate not only the legal and factual reasons for a departure, but also the logical foundation for the degree of departure selected. See, e.g., Munoz-Tello, 531 F.3d at 1189-90; Goldberg, 295 F.3d at 1138-39; Walker, 284 F.3d 1172-73; Whiteskunk, 162 F.3d at 1253-54. In other words, district courts do not fulfill their explanatory duty merely by stating the bases for the departure; they must disclose their reasons for the sentence actually imposed. See United States v. Gardner, 905 F.2d 1432, 1437 (10th Cir. 1990). The court may explain its degree of departure using any reasonable methodology, including extrapolation or analogy, hitched to the Guidelines. See Jackson, 921 F.2d at 991.

We agree with Defendant that the district court plainly erred in failing to provide an adequate explanation for its degree of departure here.[9] While the court

_____

[9] As we explained in one case that has now been on the books for seven years:

> It is true that through express adoption of the [PSR's] findings and in statements made directly to the Defendant the district court articulated the necessary legal and factual reasons justifying its decision to upwardly depart. . . . However, the district court's explanation does nothing

(continued...)

20

cited multiple factors favoring an upward departure, its only comment in regard to the degree of that departure was that Defendant's criminal history most closely resembled that of defendants with a criminal history category of VI. Such a cursory accounting fails to fulfill the district court's obligation to "precisely lay out" its "reasoning and analysis as to why" it selected "a particular degree of departure." Proffit, 304 F.3d at 1012.

That said, the plain error test renders this a Pyrrhic victory. For the district court's rationale for increasing Defendant's criminal history category by three levels is as clear to us as it was to Defendant's counsel at sentencing. After the district court revealed its inclination to increase Defendant's criminal history category by three levels, defense counsel stated that he understood the district court's "logic" for this degree of departure: If Defendant had been convicted twice of Criminal Discharge of a Firearm, his criminal history category would have been VI. Sentencing Transcript at 16. Defendant cannot demonstrate, under these circumstances, that the district court's failure to explain its degree of departure caused him prejudice. Accordingly, he cannot meet the third prong of the plain error test. See United States v. Zubia-Torres, 550 F.3d 1202, 1209 (10th Cir. 2008).

---

[9](...continued)
> more than restate the justification for upward departure and does not fulfill the separate requirement of stating the reasons for imposing the particular sentence.

Walker, 284 F.3d 1173.

21

AFFIRMED.