**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 23, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

TEQUISHA MARIE ALICEA,

    Defendant-Appellant.

No. 09-6213

(D.C. No. CR-09-00134-F)
(W. D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA, BRISCOE,** and **O'BRIEN**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is, therefore, submitted without oral argument.

Defendant Tequisha Marie Alicea pled guilty to one count of possessing fifteen of more counterfeit or unauthorized access devices with the intent to

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

defraud in violation of 18 U.S.C. § 1029(a)(3), and was sentenced to 28 months' imprisonment to be followed by a 3-year term of supervised release. Alicea now appeals arguing (1) that the district court did not use sufficiently reliable evidence in determining the number of victims for the purposes of calculating her United States Sentencing Guidelines ("U.S.S.G.") offense level and (2) that the district court erred in varying, rather than departing upward from her advisory Guideline range. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we reject Alicea's arguments and AFFIRM her sentence.

## I.

On April 8, 2009, Alicea was arrested after she attempted to purchase several prepaid Visa gift cards with a Mastercard that bore the name Lisa Richardson. At the time of Alicea's arrest, officers searched her purse and found a Washington state driver's license bearing the name Lisa Richardson, along with seven additional credit cards bearing the same name. Ten more credit cards bearing the name Lisa Richardson were subsequently found in a car that Alicea had rented in the same name.

Upon further investigation by the United States Secret Service it was determined that all eighteen cards found in Alicea's possession were counterfeit. Alicea had affixed each card with the pseudonym Lisa Richardson and with a credit card number assigned to a legitimate credit card account belonging to another person. It was also determined that several of these counterfeit cards had

been used at various retail outlets in Oklahoma during the spring of 2009 to purchase items whose aggregate cost exceeded $14,000.

Subsequently, Alicea pled guilty to one count of possessing fifteen or more counterfeit or unauthorized access devices with intent to defraud in violation of 18 U.S.C. § 1029(a)(3). The probation office then prepared a presentence report ("PSR") which, in relevant part, recommended applying a 2-level enhancement to Alicea's Guideline offense level pursuant to U.S.S.G. § 2B1.1(b)(2)(A) in light of the fact that there were more than ten victims.

Before sentencing, Alicea filed written objections to the PSR arguing, *inter alia*, that the recommended application of § 2B1.1(b)(2)(A)'s 2-level enhancement was in error because the only victims of her offense were the institutions who had issued the legitimate credit card numbers she had used to create the counterfeit cards. In response, the probation officer prepared an addendum to the PSR stating as follows:

> [T]he probation officer spoke with the Assistant United States Attorney in the case. He advised that the banks are not the victims in the case, but that the individual businesses may take the loss. The investigative agent was going to do further investigation. At this time, if the individual businesses are considered the victims, they are: Wal-Mart, Quail Springs Mall, Bath & Body Works, Avis Rent a Car, Reasor's, Yoga Quest, Chili's, Courtyard by Marriott, American Eagle, Abercrombie and Fitch, Waffle House and Gordon's. Therefore, the enhancement for 10 or more victims still applies . . . . Information regarding who actually sustained the losses in the case will be forthcoming.

ROA, Vol. 2, at 25.

At sentencing, Alicea renewed her objection, arguing that based upon the manner in which Oklahoma state law sets forth the legal relationship between credit card issuers, credit car holders, and merchants, the financial institutions were the only foreseeable victims of her offense and, therefore, the only victims who may be properly counted for the purposes of § 2B1.1(b)(2)(A). In response, the government argued that the court should look to Application Note 1 to § 2B1.1(b)(2)(A), rather than to state law, in determining how to define the term "victim."[1] The government then presented the testimony of Secret Service Agent James Bennett who explained that he had spoken to a fraud investigator at Nordstrom's Bank who told him that Nordstrom's had charged back[2] each of the nine merchants from whom Alicea had made purchases using a counterfeit card bearing a legitimate Nordstrom's number. Bennett also testified that he had spoken to representatives of Wal-Mart and Bath & Body Works who indicated that those stores would, in the future, be assessed chargebacks for the fraudulent purchases Alicea had made there.

Based on Bennett's testimony, unobjected-to portions of the PSR, and the relevant U.S.S.G. definition of "victim," the district court determined that

[1] Application Note 1 explains, in relevant part, that the term "victim" "means [] any person who sustained any part of the actual loss . . . ."

[2] A "chargeback" occurs when a credit card holder successfully challenges a credit card charge through the issuing entity who, in turn, charges the amount back to the business. See United States v. Goldstein, 442 F.3d 777, 780 (2d Cir. 2006).

4

Alicea's crime had more than ten victims and, accordingly, that the 2-level enhancement of § 2B1.1(b)(2)(A) was warranted. This brought Alicea's offense level to 10, which, when coupled with her criminal history category of III, resulted in Alicea having an advisory Guideline range for imprisonment of 10 to 16 months.

Before hearing further argument from the parties, the district court decided to give Alicea's counsel "the benefit of [its] preliminary thoughts," id. at 30, warning that it was "concerned about whether the guideline range . . . adequately reflect[ed] the seriousness of [Alicea's] criminal history," id. at 32. After hearing from Alicea and from counsel for both parties, the district court did not, however, depart upward based upon U.S.S.G. § 4A1.3(a)(1) (allowing for an upward departure in cases where reliable information indicates that a defendant's criminal history category substantially under-represents the seriousness of his or her criminal history), but did vary upward, sentencing Alicea to 28 months' imprisonment in light of its belief "that [Alicea's] guideline range is inadequate to accomplish the objectives of sentencing set forth in [18 U.S.C. §] 3553[(a)]." Id. Vol. 3, at 38. Specifically, the district court noted as follows:

> [T]he predominant factors that have had an impact on my sentencing decision in this case are to reflect the seriousness of the offense, to promote respect for the law, to provide adequate deterrence. I have also take[n] into account the background of this defendant, [and] the history and characteristics of this defendant.

Id. at 37-38.

5

Alicea now appeals her sentence arguing (1) that the district court did not use sufficiently reliable evidence in determining the number of victims and (2) that by varying upward from her advisory Guideline range based upon factors that demand a departure, rather than a variance, the district court failed to properly calculate her Guideline range.

## II.

"When considering the calculation of a Guidelines sentencing range, we review legal questions de novo and we review any factual findings for clear error, giving due deference to the district court's application of the Guidelines to the facts." United States v. Gambino-Zavala, 539 F.3d 1221, 1227-28 (10th Cir. 2008) (quotation and alteration omitted). Because, however, Alicea did not lodge an objection to the district court's decision to vary, rather than depart upward at sentencing, we review Alicea's second proposition for plain error. See United States v. Robertson, 568 F.3d 1203, 1209-10 (10th Cir. 2009). "Under that standard, we may reverse only if a defendant demonstrates an error that is plain, which not only prejudices his substantial rights, but also seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. at 1210.

We begin by considering Alicea's contention that "[t]he district court did not use reliable evidence in determining the number of victims." Aplt. Op. Br. at 11. As previously noted, for the purposes of assessing the applicability of U.S.S.G. § 2B1.1(b)(2)(A), the term "victim" is defined as "any person who

6

sustained any part of the actual loss . . . ." See U.S.S.G. § 2B1.1 cmt. n. 1. Thus, because the loss which results from a fraudulent credit card purchase is allocated by contractual agreement between the card issuer, the bank processing the credit card slip, and the merchant accepting the card, see Larry Lawrence & Bryan D. Hull, 2 Payment Systems § 17:100 (2009), in order to determine the number of victims in the instant case, the district court was required to determine how the credit card issuers and merchants who Alicea defrauded had contractually agreed to allocate their losses.

Agent Bennett's testimony at sentencing indicated that more than ten of the merchants from whom Alicea made fraudulent purchases—the nine merchants to whom Alicea had given a fraudulent Nordstom's credit card number, plus Wal-Mart and Bath & Body Works—had previously agreed to accept at least some part of the loss which resulted. Although Bennett's testimony consisted largely of hearsay, "sentencing courts may consider hearsay evidence provided that the evidence has sufficient indicia of reliability . . . ." United States v. Dazey, 403 F.3d 1147, 1177 n.7 (10th Cir. 2005). Alicea contends that "the agent's lack of personal knowledge and predictions of future events undermines the indicia of reliability needed." Aplt. Op. Br. at 14. We disagree.

Although Alicea is correct to note that Bennett did not examine any of the contracts in question before testifying, she has failed to provide a compelling argument which suggests that this prevented Bennett from ascertaining accurate

7

information about the contracts' terms during the course of his investigation. Further, the fact that some of Bennett's testimony related to future chargebacks is of no moment because we perceive no reason to believe that the reliability of Bennett's knowledge of the contracts' terms was in any way dependent upon the timing of the chargeback a particular contract might have mandated. In sum, the district court used sufficiently reliable evidence in determining the number of victims and accordingly, its application of the 2-level enhancement of § 2B1.1(b)(2)(A) was proper.

Finally, we reject Alicea's contention that the district court committed procedural error by failing to properly calculate her advisory Guideline range. Although the district court initially indicated its belief that a departure based upon U.S.S.G. § 4A1.3(a)(1) might be warranted, ultimately, it decided to vary, rather than depart, and it did so not based upon a belief that Alicea's criminal history category under-represented the seriousness of her criminal history, but instead, based upon its consideration of the 18 U.S.C. § 3553(a) factors. Accordingly, there was no procedural error.

**III.**

We reject Alicea's arguments and AFFIRM the sentence imposed by the district court.

Entered for the Court


Mary Beck Briscoe
Circuit Judge