**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 27, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

STAR JOSEPH, a/k/a Joseph Star,

    Defendant - Appellant.

No. 18-2023
(D.C. No. 2:17-CR-02483-KG-1)
(D. N.M.)

_____

**ORDER AND JUDGMENT***
_____

Before **BRISCOE**, **KELLY**, and **MORITZ**, Circuit Judges.
_____

This appeal concerns Defendant-Appellant Star Joseph's sentence for his conviction for high speed flight from an immigration checkpoint. Joseph argues that the district court procedurally erred by: (1) before sentencing, not providing sufficiently specific notice that it was considering an upward departure based on inadequacy of criminal history category, and (2) at sentencing, not adequately articulating its reasons for upwardly departing from a criminal history category of IV to a criminal history category of VI. Joseph did not raise either argument below, so we review for plain error.

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

We conclude that, as to both errors, Joseph does not establish that his substantial rights were affected. We therefore AFFIRM Joseph's sentence.

**I**

Joseph's conviction arises out of events that occurred on July 1, 2017, at a border patrol checkpoint in New Mexico. When Joseph, a U.S. citizen, arrived at the checkpoint, a border patrol agent checked the records on the vehicle Joseph was driving and learned that the vehicle had been reported stolen. ROA, Vol. II, at 3. Joseph also could not produce a copy of his driver's license, so the border patrol agent directed him to a secondary inspection area. Id. At the secondary inspection area, another agent approached Joseph's vehicle. Id. At this point, Joseph fled the checkpoint in the vehicle, with agents pursuing. Id. At times during the pursuit, Joseph drove up to 70 miles per hour in a 50 mile-per-hour speed zone. Id. Joseph successfully evaded the agents. Id. He was later apprehended and charged with High Speed Flight from an Immigration Checkpoint, in violation of 18 U.S.C. § 758, to which he pleaded guilty.

The probation office prepared a Presentence Investigation Report. The PSR calculated a total offense level of 8 and a criminal history category of IV, resulting in an advisory Guideline imprisonment range of 10 to 16 months. Id. at 5, 10, 16. The PSR identified no factors warranting a departure. Id. at 18.

On January 17, 2018, at the hearing initially scheduled for Joseph's sentencing, the district court told Joseph, Joseph's counsel, and the government, "I am considering, though I have not decided, whether an upward variance from offense level 8 is necessary and appropriate." ROA, Vol. III, at 7. The district court pointed

2

to "the circumstances within which Mr. Joseph was apprehended," and Joseph's criminal history, "which dates to 2003, . . . and includes numerous other convictions since then," and stated it was "describing all of that[] . . . to let [the parties] know" that it was considering an above-Guidelines sentence. Id. at 6–7. The district court stated:

> Mr. Joseph, so what I've explained is, based on your history, I'm considering—and once again, I haven't decided what's the most appropriate sentence for you, but if I'm at all considering a higher sentence than what is contemplated in the guidelines, and for you right now that's ten to 16 months, I have to give your counsel notice, and that's what I'm doing now.

Id. at 9. Neither Joseph nor the government requested clarification about the specific reason the district court was considering imposing an above-Guidelines sentence.[1]

After the January 17, 2018 hearing, Joseph filed a sentencing memorandum. ROA, Vol. I, at 7–11. He acknowledged that the district court had notified the parties that it was considering an above-Guidelines sentence, but noted that the court "did not specify whether this consideration was due to a belief that Mr. Joseph's criminal history category under represents his criminal conduct, or whether the guideline range did not appear to afford enough time for meaningful treatment."[2] Id.

_____

[1] A district court is not required to give notice of an upward *variance* based on the 18 U.S.C. § 3553(a) factors—only of an upward *departure* from the advisory Guideline sentence. Irizarry v. United States, 553 U.S. 708, 714–16 (2008).

[2] Of course, extending Joseph's term of imprisonment solely for Joseph to receive treatment would be error. See Tapia v. United States, 564 U.S. 319, 335 (2011) (holding that a district court "may not impose or lengthen a prison sentence to

(Continued . . .)

at 7 & n.1.  Nevertheless, Joseph argued against an upward departure on the basis of inadequacy of his criminal history category pursuant to § 4A1.3 of the Sentencing Guidelines.  Id. at 8–9.  Joseph discussed several of his prior felony convictions, noting that the Guidelines direct that those convictions be assessed no criminal history points.  Id. at 8 (discussing felony convictions that received no criminal history points because they were "from 2003 and 2004" and therefore more than 10 years old, and a conviction from 2011 that "was assessed zero criminal history points based on the concurrent nature of that sentence").  Joseph also noted two pending state charges, and discussed his counsel's understanding of how those charges would be resolved.  Id. at 9.  Joseph argued that a sentence within the Guideline range of 10 to 16 months' imprisonment, "followed by a likely state sentence in a pending matter, . . . will be sufficient but not greater than necessary to meet the requirements of § 3553(a)."  Id. at 9.

On February 6, 2018, at the sentencing hearing, the district court discussed in detail the nature of Joseph's offense.  ROA, Vol. III, at 22–24.  It also recounted Joseph's criminal history, noting that it

> goes back to . . . the age of 19 in 2003.  It includes residential burglary, 2003, when you're 21.[3]  It includes child abuse.  It includes aggravated

---

(cont'd)
enable an offender to complete a treatment program or otherwise to promote rehabilitation.").  Joseph does not argue that happened here.

[3] The PSR indicates that Joseph was 19 on March 21, 2003, ROA, Vol. II, at 5, and 21 on December 13, 2003, id. at 6.  Based on Joseph's date of birth, he was 20

(Continued . . .)

assault against a household member. And I read the circumstances surrounding that . . . . These are serious things.

> . . . .

> There's a robbery[] . . . ; false imprisonment; another battery against a household member. These things are concerning. . . . [A]nother conviction for battery against a household member. . . . Robbery . . . ; attempt to commit a felony and armed robbery[] . . . . These are all things that are very troubling. And this occurred in 2011.

> There are other arrests that were pending. . . . [O]ne charge that's pending in Texas. This occurred on February 1st, 2017, just about one year ago. Another charge in Albuquerque . . . . [Another charge], battery upon a peace officer. This is still very serious. [A]rmed robbery, aggravated battery against a household member, though this was dismissed without prejudice[] . . . . Evading and resisting[] . . . .

Id. at 23–25.

The district court discussed Joseph's convictions for "domestic violence, where multiple women were victimized," and identified those convictions as "being other examples of [Joseph's] violent history." Id. at 31. The district court also stated, "I don't really understand how you would ultimately receive a probationary sentence for the child abuse and aggravated assault charge and conviction . . . , nor do I understand how you would receive a probationary sentence for the robbery . . . ." Id. The district court announced that it had "considered Section 4A1.3[4] relating to

_____

(cont'd)
when he was arrested for the March 2003 offense, and 21 when arrested for the December 2003 offense. See id. at 2. This discrepancy does not affect our analysis.

[4] Section 4A1.3 provides, in relevant part: "If reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant

(Continued . . .)

5

criminal history and upward departures as well as Section 4A1.1,[5] that also relating to criminal history." Id. at 26.

At the hearing, Joseph's counsel did not object to an upward departure based on inadequate notice, but asked to "address the issue with the seriousness of this offense . . . and the criminal history score." Id. at 27. Regarding Joseph's criminal history score, his counsel argued

> when you look at the priors that the Court expressed concern about, many of them are from 2003, 2004. . . .
>
> [W]hen confronted, Mr. Joseph runs. . . . He certainly has batteries. . . . [H]e has some misdemeanor-type violent charges, but when confronted by an authority figure, he runs. This is a high-speed flight case. The prior robbery I mentioned, he fled the scene.
>
>     He's not looking to harm people. He's looking for a way to have a roof over his head, to find meals, to take a shower. [T]his is a situation where homelessness and poverty have resulted in some extremely poor choices on Mr. Joseph's part.

Id. at 28–30.

When sentencing Joseph, the district court stated that Joseph's

> prior history is of serious concern to this Court. It involves serious acts of violence toward law enforcement, girlfriends, and the general public, which suggests a propensity for violence.
>
>     Despite previous sanctions, [Joseph] has continued to pose a serious risk to the community and a disregard for the law.
>
>     Based on these findings, I've determined that a sentence above

---

(cont'd)
will commit other crimes, an upward departure may be warranted." U.S.S.G. § 4A1.3(a)(1).

[5] Section 4A1.1 governs the calculation of criminal history categories.

6

the advisory guideline imprisonment range will be reasonable and sufficient, but not greater than necessary to accomplish the sentencing goals as set forth in 3553(a).

. . . .

[A]s to the criminal history category of IV, I will note that the criminal history described in the Presentence Report more closely, I believe, resembles a category of VI, so, therefore, I'm finding that a category IV underrepresents the seriousness of his criminal history.

Id. at 34. "[B]ased on an offense level of 8 and a criminal history category of VI," the district court calculated a Guideline range of 18 to 24 months' imprisonment, and sentenced Joseph to 24 months' imprisonment. Id. at 35.

In the final judgment, entered on February 6, 2018, the stated basis for departure was: "Pursuant to Section 4A1.1 and 4A1.3, the Court finds that defendant's criminal history under represents the defendant's Criminal History Category. The Criminal History is more similarly situated with that of a Category of VI." ROA, Vol. II, at 25.

Joseph timely appealed. We have jurisdiction under 28 U.S.C. § 1291.

## II

Joseph asserts two issues on appeal. First, he contends that, before sentencing, the district court did not give sufficiently specific notice that it was considering an upward departure based on Joseph's criminal history. Second, he argues that, at sentencing, the district court erred by failing to "specifically articulate its reasons" for increasing Joseph's criminal history category from IV to VI. Aplt. Br. at 1. Joseph argues that both errors require remand for resentencing.

7

Because Joseph did not object to either asserted error in the district court, we review for plain error. We conclude that Joseph does not establish that either asserted error affected his substantial rights, and therefore does not carry his burden under plain-error review.

## A.    Standard of Review

Joseph may "obtain relief under the plain-error doctrine only if . . . : (1) the district court committed error; (2) the error was plain—that is, it was obvious under current well-settled law; (3) the error affected [his] substantial rights; and (4) 'the error seriously affected the fairness, integrity, or public reputation of judicial proceedings.'" United States v. Gantt, 679 F.3d 1240, 1246 (10th Cir. 2012) (alterations omitted) (quoting United States v. Dazey, 403 F.3d 1147, 1174 (10th Cir. 2005)). "Because all four requirements must be met, the failure of any one will foreclose relief and the others need not be addressed." Id.

## B.    District Court's Notice of Contemplated Departure

Joseph argues that he succeeds under plain-error review because, although the district court gave notice that it was considering a sentence above the Guideline range, it "never specifically stated that it was considering an upward departure pursuant to U.S.S.G. § 4A1.3(a)." Aplt. Br. at 13. We conclude that, even assuming the notice the district court gave was inadequate, Joseph's substantial rights were not affected, so he cannot meet the plain-error review standard.

To show that an error affected his substantial rights, "a defendant generally must demonstrate that an error was 'prejudicial, meaning that there is a reasonable

8

probability that, but for the error claimed, the result of the proceeding would have been different.'" United States v. Bustamonte-Conchas, 850 F.3d 1130, 1138 (10th Cir. 2017) (quoting United States v. Algarate-Valencia, 550 F.3d 1238, 1242 (10th Cir. 2008)). "Normally, although perhaps not in every case, the defendant must make a specific showing of prejudice" to show that his or her substantial rights were affected. United States v. Olano, 507 U.S. 725, 735 (1993); see also Bustamante-Conchas, 850 F.3d at 1138–40 (quoting Olano, 507 U.S. at 735, and discussing possible forms of per se prejudicial procedural errors such as denial of allocution right and incorrect calculation of the Guideline range). Joseph therefore must establish that, but for the district court's failure to provide more specific notice, he would have received a different sentence. He has failed to make that showing.

First, Joseph provides nothing other than a conclusory statement that the district court's failure to provide more specific notice "resulted in an increased sentence." Aplt. Br. at 13. This does not satisfy his burden to make the "specific showing of prejudice," necessary in plain-error review. See Olano, 507 U.S. at 735. Joseph points to no additional arguments he would have made in the district court, or research or investigation he would have done before sentencing had the district court given more specific notice.[6] Cf. United States Calzada-Maravillas, 443 F.3d 1301,

---

[6] At oral argument, counsel for Joseph asserted that, had the district court given more specific notice, counsel would have sought additional records for some of Joseph's convictions and attempted to call a witness at the hearing. Oral Arg. Tr. at 04:38–04:47. This argument, asserted for the first time at oral argument "comes too late." Thomas v. Denny's, Inc., 111 F.3d 1506, 1510 n.5 (10th Cir. 1997).

9

1304 (10th Cir. 2006) (stating that notice matters because it "allows the parties to 'marshal and present evidence opposing any departure'" (quoting United States v. Burdex, 100 F.3d 882, 885 (10th Cir. 1996))).

Further, in both his sentencing memorandum and at the sentencing hearing, Joseph argued against an upward departure based on his criminal history. See ROA, Vol. I, at 8–9 (discussing the convictions in Joseph's criminal history and noting why they were assessed no criminal history points); ROA, Vol. III, at 28–30 (arguing that much of Joseph's criminal history was because "[h]e's looking for a way to have a roof over his head, to find meals, to take a shower"). Therefore, not only has Joseph not identified what else he would have argued had he been given more specific notice, but he made arguments before and during his sentencing hearing against an upward departure based on his criminal history.

Joseph has not established that his substantial rights were affected by the first error he claims, and he therefore fails to carry his burden under plain-error review.

## C.    District Court's Explanation of the Basis for Departure

Joseph also argues that the district court did not adequately explain its reasons for departing upward and, "[g]iven this lack of explanation, remand for resentencing is necessary."[7] Aplt. Br. at 17. We conclude that Joseph's substantial rights were not

---

[7] Joseph argues that we review this asserted error for abuse of discretion. Aplt. Br. at 14. However, Joseph did not preserve this objection in the district court, so we review for plain error. At the end of sentencing, the district court noted Joseph's objection to his sentence "because it's beyond what is contemplated within the Guidelines otherwise." ROA, Vol. III, at 40–41. This is insufficient to preserve an

(Continued . . .)

10

affected by the error he asserts,[8] so he cannot meet the plain-error review standard.

A district court may depart to a higher criminal history category when "reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3(a)(1). Section 4A1.3(a)(2) includes a non-exhaustive list of grounds for departure for "an inadequately represented criminal history category." United States v. Pettigrew, 468 F.3d 626, 641 (10th Cir. 2006). Here, the information in the PSR provides a sufficient basis for upwardly departing, and Joseph cannot establish that, but for the district court's inadequate explanation, his sentence would have been different.

At sentencing, the district court discussed Joseph's "serious" and "concerning" criminal history that "goes back to . . . the age of 19 in 2003." ROA, Vol. III, at 24. This concern could provide a proper basis for an upward departure. Departures can be justified for stale but serious convictions, such as those the district court identified. See U.S.S.G. § 4A1.2, cmt. n.8 ("If the court finds that a sentence

_____

(cont'd)
objection for inadequate explanation. See United States v. Robertson, 568 F.3d 1203, 1210 (10th Cir. 2009) ("[U]nless Defendant lodged a specific objection to a procedural error at sentencing, our review is limited to plain error.").

[8] The United States appropriately concedes that the district court erred by inadequately explaining its reasons for departing upward. See Robertson, 568 F.3d at 1215 (holding that a district court did not adequately explain its upward departure when it "cited multiple factors favoring an upward departure," but "its only comment in regard to the degree of that departure was that Defendant's criminal history most closely resembled that of defendants with a criminal history category of VI").

imposed outside [the applicable] time period is evidence of similar, or serious dissimilar, criminal conduct, the court may consider this information in determining whether an upward departure is warranted under § 4A1.3.").

The district court also noted that it could not "understand" how Joseph received "a probationary sentence for the child abuse and aggravated assault charge and conviction," or for a robbery charge. ROA, Vol. III, at 31. This could also provide a proper basis for an upward departure. Departures can be justified when prior lenient sentences result in a lower criminal history category than less lenient sentences would have. See U.S.S.G. § 4A1.3, cmt. background ("[A] defendant with an extensive record of serious, assaultive conduct who had received what might now be considered extremely lenient treatment in the past might have the same criminal history category as a defendant who had a record of less serious conduct.").

Additionally, the district court discussed Joseph's charge for "armed robbery, [and] aggravated battery against a household member, [which] was dismissed without prejudice." ROA, Vol. III, at 25. The conduct underlying these charges also resulted in a charge of Aggravated Fleeing a Law Enforcement Officer. See ROA, Vol. II, at 11–12. This, too, could provide a proper basis for an upward departure. Departures can be justified based on prior similar criminal conduct not accounted for in the criminal history category. See U.S.S.G. § 4A1.3(a)(2)(E) (stating that "[p]rior similar adult criminal conduct not resulting in a criminal conviction" can form the basis for upward departure).

Therefore, although the district court did not *specifically* identify each of these

12

reasons for departing upward, its "rationale for increasing [Joseph]'s criminal history category" was clear, and is supported by the evidence in the record. Robertson, 568 F.3d at 1215; see also United States v. Uscanga-Mora, 562 F.3d 1289, 1295 (10th Cir. 2009) ("The defendant thus received a sentence merited by the evidence, and we cannot say—as we would have to in order to find plain error—that, but for the claimed error, the defendant's sentence would have been any different.").

Even though the district court erred by inadequately explaining its reasons for departing upward, Joseph cannot establish that the error affected his substantial rights. He therefore fails to carry his burden under plain-error review.

## III

Because we conclude that Joseph does not establish that either error he asserts affected his substantial rights, we AFFIRM the judgment of the district court.

Entered for the Court

Mary Beck Briscoe
Circuit Judge