FILED
United States Court of Appeals
Tenth Circuit

January 26, 2010

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MANUELITO RAMON OSBORNE,

Defendant-Appellant.

No. 08-7121

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA
(D.C. NO. CR-08-06-RAW-1)**

Barry L. Derryberry, Research and Writing Specialist (Julia L. O'Connell, Federal Public Defender, and Robert A. Ridenour, Assistant Public Defender, with him on the brief), Office of the Federal Public Defender, Eastern District of Oklahoma, Tulsa, Oklahoma, for Defendant-Appellant.

Douglas E. Snow, Assistant United States Attorney (Sheldon J. Sperling, United States Attorney, with him on the brief), United States Attorney's Office, Eastern District of Oklahoma, Muskogee, Oklahoma, for Plaintiff-Appellee.

Before **HENRY**, Chief Judge, and **SEYMOUR** and **HOLMES**, Circuit Judges.

**PER CURIAM**.

Manuelito Osborne pleaded guilty to one count of bank robbery in violation of 18 U.S.C. § 2113(a). In arriving at his 132-month sentence, the district court

applied a two-level enhancement of the offense level pursuant to U.S.S.G. § 3C1.2 because Mr. Osborne "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer."

At the government's request, the district court departed upward an additional two levels. Noting that Mr. Osborne was involved in a high-speed car chase through a Wal-Mart parking lot, the district court offered two grounds for the upward departure. First, it explained that a high-speed car chase "always endanger[s] more than one person, meaning that it should automatically qualify for consideration for an upward departure." Rec. vol. II, at 39. Second, in the court's view, Mr. Osborne's particular high-speed car chase "put a huge number of people at risk." *Id.* at 41.

In this appeal, Mr. Osborne challenges the two-level departure. Although we are not persuaded by the district court's apparent view that all high-speed car chases will necessarily justify an upward departure, we agree that under the particular facts of Mr. Osborne's chase, the departure is more than warranted. We therefore affirm Mr. Osborne's sentence.

## I. BACKGROUND

Around 5 p.m. on Wednesday, January 16, 2008, in Wagoner, Oklahoma, police attempted to arrest Manuelito Osborne. Mr. Osborne's wife had previously identified Mr. Osborne from a bank surveillance picture as the man who had

robbed a local bank at gunpoint earlier that afternoon. Mr. Osborne was found driving a white 1990 Lincoln Continental out of a liquor store's parking lot. When a police officer tried to stop his car, Mr. Osborne drove away, with a police vehicle in pursuit.

The chase continued through a residential area with a speed limit of 25 miles per hour, where Mr. Osborne's car was observed driving over 75 miles per hour, and where he ran six or seven stop signs. Several other police vehicles joined the chase, which continued onto North U.S. Highway 69. When one officer maneuvered his car alongside Mr. Osborne's on the highway to try to block his car, Mr. Osborne turned into a parking lot shared between a Wal-Mart, a McDonald's, and a gas station.

Mr. Osborne circled the Wal-Mart parking lot four times, driving at approximately 50 miles per hour. He was pursued by approximately ten patrol cars, with sounding sirens and flashing emergency lights. During these laps around the parking lot, Mr. Osborne intermittently braked his Lincoln and swerved into the pursuing officers in an attempt to wreck their vehicles. He succeeded in part: Mr. Osborne's braking caused one officer's car to collide with the fleeing Lincoln, and Mr. Osborne wrecked his car into a different officer's car, injuring the Federal Bureau of Investigation agent sitting in the passenger seat.

In addition to the pursued car and the pursuing patrol cars, there were approximately 70 to 80 civilian vehicles in the Wal-Mart parking lot during the time of the chase, as well as pedestrians and shoppers. One testifying officer described seeing a man in the parking lot running away from the chase, and also a woman pushing a child in a shopping cart fleeing from the parking lot into the store. At some point during the chase in the parking lot, one police officer fired his gun.

After driving out of the Wal-Mart parking lot, Mr. Osborne led his police pursuers back onto U.S. Highway 69, this time heading south. At this point, one of the police officers was able to shoot out both of Mr. Osborne's rear tires. Mr. Osborne's car continued south, but a patrol car caught up to Mr. Osborne's slowing vehicle and performed a "pit maneuver," tapping the rear bumper of Mr. Osborne's Lincoln so that it spun out and crashed into the ditch on the side of the highway.

Mr. Osborne was then taken into custody and charged with one count of bank robbery in violation of 18 U.S.C. § 2113(a). Mr. Osborne pled guilty without a plea agreement.

The Presentence Report (PSR) recommended a two-level sentencing enhancement for reckless endangerment during flight. *See* U.S.S.G. § 3C1.2. Mr. Osborne did not object to the PSR's recommended offense level.

The government filed a motion for an upward departure from the sentencing guidelines, based on reckless endangerment during flight substantially in excess of the degree considered by the guidelines. Mr. Osborne objected to this motion for an upward departure.

After an evidentiary hearing and argument, the district court granted the government's motion for an upward departure. Mr. Osborne's total offense level was revised upward an additional two levels, giving a guideline range of 120-150 months, and he was sentenced to pay $3,521.98 in restitution and serve 132 months in prison, followed by a supervised release term of 36 months.

Mr. Osborne appeals the two-level upward departure and requests that we remand the case for resentencing. He argues that the upward departure was erroneous, because the circumstances of his flight and the number of people he put at "substantial risk of death or bodily injury," U.S.S.G. § 3C1.2, were not outside the heartland of flight from law enforcement already considered within the guidelines.

## II. DISCUSSION

### A. Standard of Review.

We review for abuse of discretion the district court's sentencing decision. *Gall v. United States*, 552 U.S. 38, 51 (2007) ("Regardless of whether the sentence imposed is inside or outside the Guidelines range, the appellate court must review the sentence under an abuse-of-discretion standard."). Although

*United States v. Booker*, 543 U.S. 220 (2005) made the sentencing guidelines advisory and not mandatory, "the [*Booker*] Court noted that district courts must still 'consult [the] Guidelines and take them into account when sentencing'" and "[a]lthough district courts post-*Booker* have discretion to assign sentences outside of the Guidelines-authorized range, they should also continue to apply the Guidelines departure provisions in appropriate cases." *United States v. Sierra-Castillo*, 405 F.3d 932, 936 n.2 (10th Cir. 2005) (quoting *Booker*, 543 U.S. at 224).

This court applies its own four-part test in reviewing a district court's upward departure from the sentencing guidelines:

> (1) whether the factual circumstances supporting a departure are permissible departure factors; (2) whether the departure factors relied upon by the district court remove the defendant from the applicable Guideline heartland thus warranting a departure; (3) whether the record sufficiently supports the factual basis underlying the departure; and (4) whether the degree of departure is reasonable.

*United States v. Montgomery*, 550 F.3d 1229, 1233 (10th Cir. 2008) (internal quotation marks omitted); *see also United States v. Collins*, 122 F.3d 1297, 1303 (10th Cir. 1997) (establishing the four-part test). This court's four-part test remains valid even after *Gall*. *United States v. Munoz-Tello*, 531 F.3d 1174, 1186 n.22 (10th Cir. 2008), *cert. denied*, 129 S. Ct. 1314 (2009).

"All of these [four] steps are subject to a unitary abuse of discretion standard." *United States v. Wolfe*, 435 F.3d 1289, 1295 (10th Cir. 2006)

(describing the four-part test) (internal quotation marks omitted).  Despite this unitary abuse of discretion standard, "the degree of deference to the district court varies depending on the essential nature of the question presented on appeal.  That is, if the question on appeal has the hue of a factual question, we accord the district court greater deference, whereas we undertake plenary review of questions that are in essence legal."  *Munoz-Tello*, 531 F.3d at 1186 (citations and internal quotation marks omitted) (describing the four-part test).

**B.  The District Court's Decision to Depart Upward.**

U.S.S.G. § 3C1.2 provides for a two-level enhancement for flights when "the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer."  An application note allows a potential upward departure from the guidelines for such flights, stating that "[i]f death or bodily injury results or the conduct posed a substantial risk of death or bodily injury to more than one person, an upward departure may be warranted."  *Id.* at n.6.

The guidelines explain that a sentencing court may upwardly depart from the applicable guideline range "in an exceptional case, . . . if the court determines that such circumstance is present in the offense to a degree substantially in excess of . . . that which ordinarily is involved in that kind of offense."  U.S.S.G. § 5K2.0(a)(3).  The application note to this subsection states in part:

> Subsection (a)(3) authorizes the court to depart if there exists an aggravating . . . circumstance . . . to a degree not adequately taken into consideration in the guidelines. However, inasmuch as the Commission has continued to monitor and refine the guidelines since their inception to determine the most appropriate weight to be accorded the . . . aggravating circumstances specified in the guidelines, it is expected that departures based on the weight accorded to any such circumstance will occur rarely and only in exceptional cases.

U.S.S.G. § 5K2.0, n.3(B)(i).

At the sentencing hearing, the district court gave two alternative holdings for why Mr. Osborne's case merited an upward departure from the guidelines. First, the district court held that a high-speed car chase (which Mr. Osborne's was) "automatically" qualifies for an upward departure from the guidelines, citing U.S.S.G. § 3C1.2 n.6:

> In this Court's opinion a high speed car chase does, in fact, *always* endanger more than one person, meaning it should *automatically* qualify for consideration of an upward departure under Application Note 6 because a car chase would, in this Court's opinion, automatically take it out of the heartland cases.

Rec. vol. II, at 39 (emphasis added). Second, the district court described the specific facts of Mr. Osborne's high-speed car chase, holding them to be exceptional and outside of the heartland of ordinary cases:

> I find by a preponderance of the evidence that the Defendant's repeated high speed passes through and past the Wal-Mart Store parking lot, the gas station and the McDonald's put a huge number of people at risk that would not have been – that ordinarily would not be affected in fleeing from law enforcement officers. It's to a degree not adequately considered by the Sentencing Commission in 3(c)1.2. Therefore, Application Note 6's suggestion of the possibility of an upward

departure is applicable in this case and causes this case to differ significantly from the heartland of cases covered by this guideline.

*Id.* at 41.

We adopt the second of the district court's two rationales, and affirm the upward departure because the facts of Mr. Osborne's high-speed car chase were exceptional and therefore outside of the heartland of ordinary cases.

## C. Departure Analysis.

We read Mr. Osborne's appellate brief as challenging the district court's application of the second prong of the four-part departure inquiry: whether the factors relied upon by the district court remove him from the applicable guideline heartland and thus warrant a departure. When analyzing this prong, the district court "commingles factual and legal questions." *Munoz-Tello*, 531 F.3d at 1189. The "determination of the heartland is a legal matter to the extent that it relies on interpretation of Guidelines language but a factual matter to the extent that it relies on experience with the type of offense involved to decide whether the facts of the case at hand are usual or unusual, ordinary or not ordinary, and to what extent." *United States v. Jose-Gonzalez*, 291 F.3d 697, 704 (10th Cir. 2002) (internal quotation marks omitted).

Here, the district court's justifications for the upward departure encompass both legal and factual matters. The court's first rationale—that "a high speed car chase does, in fact, always endanger more than one person" and therefore "should

- 9 -

automatically qualify for consideration of an upward departure under Application Note 6"— constitutes a legal definition of the scope of the heartland that we examine de novo. Rec. vol. II, at 39; *see United States v. Sicken*, 223 F.3d 1169, 1173 (10th Cir. 2000) ("[W]here a district court's decision to depart involves its determination as to what constitutes a guideline's heartland, appellate review would not be deferential because the question of what constitutes a guideline's heartland is essentially legal in nature.") (citing *United States v. Rivera*, 994 F.2d 942, 951 (1st Cir. 1993) (Breyer, C.J.) ("Plenary review is also appropriate where the appellate court, in deciding whether the allegedly special circumstances are of a kind that permits departure, will have to perform the quintessentially legal function of interpreting a set of words, those of an individual guideline, in light of their intention or purpose, in order to identify the nature of the guideline's heartland . . . .") (citations and internal quotation marks omitted)).

In contrast, the court's finding that the circumstances of Mr. Osborne's high-speed car chase were exceptional, and therefore outside of the heartland of ordinary flights from law enforcement, constitutes a factual determination to which we owe substantial deference. *See Jose-Gonzalez*, 291 F.3d at 703-04 ("Whether a given factor is present to a degree not adequately considered by the Commission . . . [is a] matter[] determined in large part by comparison with the facts of other Guidelines cases. District courts have an institutional advantage over appellate courts in making these sorts of determinations, especially as they

see so many more Guidelines cases than appellate courts do.") (citing *Koon v. United States*, 518 U.S. 81, 98 (1996)).

We are unpersuaded by the district court's first rationale. The district court would deem as categorically outside of the heartland of flights from law enforcement high-speed car chases under the view that all such chases endanger more than one person. We cannot conclude as a legal matter, however, that this is so.[1] Furthermore, we do not believe that such a categorical exclusion would have been within the contemplation of the Sentencing Commission in drafting application note 6 to § 3C1.2. The departures envisioned by that note are subject to the limiting principles articulated by the Commission in Chapter Five of the guidelines. *See* U.S.S.G. § 3C1.2 n.6 (offering "Chapter Five, Part K (Departures)" as authority for the envisioned departures). In that chapter, the Commission expressed its expectation that departures based upon the conclusion that aggravating circumstances are present to a degree not adequately taken into consideration by the guidelines "will occur rarely and only in exceptional cases." U.S.S.G. § 5K2.0, n.3(B)(i).

However, in substance, the district court determined here that the aggravating circumstances associated with *all* high-speed car chases were not

---

[1] The district court did not purport to rely on any empirical data that unequivocally establishes this purported characteristic of high-speed car chases, and we strongly doubt that such data actually exists.

adequately taken into account by the Commission in drafting the guidelines and, therefore, such chases *automatically* warranted upward departures. Far from ensuring that such aggravating-circumstance departures will "occur rarely and only in exceptional cases," the likely effect of the district court's categorical rule would be to make the majority of actual flights from law enforcement involving a car eligible for upward departures. The Commission could not have contemplated such a result. *See Koon*, 518 U.S. at 93 (describing the heartland as "a set of typical cases embodying the conduct that each guideline describes"). Consequently, we conclude that the district court's categorical rule constituting its first departure rationale is legal error.

But that does not end our analysis. The district court offered a second alternative rationale to justify its upward departure that was predicated on the specific facts of Mr. Osborne's flight from law enforcement. Acknowledging the district court's special ability to judge the "ordinariness or unusualness of a particular case," *id.* at 99 (internal quotation marks omitted), we hold that the district court did not abuse its discretion in finding that the specific facts of Mr. Osborne's flight were outside of the heartland of typical flights from law enforcement.

The district court held that Mr. Osborne's "repeated high speed passes through and past the Wal-Mart Store parking lot, the gas station and the McDonald's put a huge number of people at risk that would not have been – that

ordinarily would not be affected in fleeing from law enforcement officers.  It's to a degree not adequately considered by the Sentencing Commission in 3(c)1.2." Rec. vol. II, at 41.  These factual findings warranted an upward departure under U.S.S.G. § 3C1.2 n.6 ("a substantial risk of death or bodily injury to more than one person") and U.S.S.G. § 5K2.0(a)(3) ("[A] circumstance is present . . . to a degree substantially in excess of . . . that which ordinarily is involved in that kind of offense.").

## III.  CONCLUSION

For the foregoing reasons, we hold that the district court's two-level upward departure from the guidelines was not an abuse of discretion, and we AFFIRM.