**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CHAELYN NICHOLE AARON,

Defendant - Appellant.

No. 18-3232
(D.C. No. 6:18-CR-10045-EFM-1)
(D. Kansas)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **SEYMOUR**, and **McHUGH**, Circuit Judges.
_____

On March 28, 2018, Chaelyn Nichole Aaron committed her latest in a long

string of thefts by stealing seven nine-millimeter handguns from a store in Park City,

Kansas. Ms. Aaron pleaded guilty to theft of firearms in violation of 18 U.S.C.

§ 922(u). At sentencing, the district court departed upward from the Guidelines' 77–

99 month range and imposed a sentence of 110 months' imprisonment, followed by a

_____

[*] After examining the briefs and appellate record, this panel determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case was therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

three-year term of supervised release. Ms. Aaron appeals. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm.

## I.     BACKGROUND

On March 28, 2018, Chaelyn Nichole Aaron entered an Atwoods Ranch & Home store in Park City, Kansas, and made her way to a large glass case displaying firearms for sale. She took a small crowbar from a nearby store display, pried open the glass case, took seven nine-millimeter handguns, and carried them out of the store without paying.

On April 2, 2018, Ms. Aaron was arrested after a "short chase" on foot, and she admitted to police that she had stolen the seven firearms. ROA, vol. II, at 9. After being released from custody, Ms. Aaron evaded arrest by ATF agents on April 12, 2018, by "driving at a high rate of speed and using the oncoming traffic lanes." *Id.* at 11. She was again arrested on April 19, 2018, and on April 25, 2018, a grand jury indicted Ms. Aaron on two counts: being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) ("Count One"), and theft of firearms, in violation of 18 U.S.C. § 922(u) ("Count Two").

Ms. Aaron entered a plea agreement under which she pleaded guilty to Count Two. For its part, the Government agreed to move to dismiss Count One, recommend that Ms. Aaron be sentenced "at the low end of the Guideline range," recommend a two-level reduction in calculating Ms. Aaron's offense level for acceptance of responsibility, and recommend an additional one-level reduction for timely notifying authorities of the intention to enter a guilty plea. *See id.*, vol. I, at 31–32.

2

Using the 2016 edition of the Sentencing Guidelines, Ms. Aaron's presentence investigation report ("PIR") calculated a criminal history score of 26 and a criminal history category of VI. The PIR detailed Ms. Aaron's extensive criminal history: "from 2004 to 2012, [she] had been convicted of numerous theft-type crimes, including theft, criminal deprivation of property, and possession of stolen property, on seven occasions." Appellee's Br. at 3. The PIR noted seven additional instances of criminal conduct: five instances of theft and two instances of smuggling contraband into correctional facilities. It also noted eight pending charges against Ms. Aaron (along with three cases where charges had not yet been brought), including traffic offenses, car theft, several instances of possession of stolen property, and at least three instances of burglary. Finally, the PIR listed ten additional arrests, including one for felony theft and two for misdemeanor possession of stolen property.

Citing Ms. Aaron's extensive criminal history, the PIR identified U.S.S.G. § 4A1.3 (Criminal History Adequacy) as "potential grounds for departure," noting:

> [Ms.] Aaron has 26 criminal history points. The highest criminal history category of VI is achieved by having 13 criminal history points.
> [Ms.] Aaron has twice the amount of points needed to be in the highest category. The defendant has been involved in criminal activity since the age of 14 . . . . The defendant's criminal history category substantially under-represents the likelihood that the defendant will commit other crimes, therefore an upward departure may be warranted.

ROA, vol. II, at 45.

Ms. Aaron objected to the PIR's § 4A1.3 recommendation, arguing "[t]he crimes she committed as a juvenile and young adult were committed while she was under the influence of addiction" and "[s]he has never been arrested or convicted for

3

a crime of violence or an offense involving the use of a firearm or weapon." *Id.* at 48. Ms. Aaron claimed she "suffered from severe, persistent mental illness," had a "long history of suicidal ideation and attempts," and was severely addicted to drugs. *Id.*, vol. III, at 17. She argued she committed the instant offense under the influence of heroin and for the purpose of "pay[ing] off an antecedent drug debt," and that "an upward departure [would] not achieve anything and [would] punish her because of her organic mental health issues and drug addiction from childhood." *Id.*, vol. I, at 35. Accordingly, Ms. Aaron requested the district court impose a sentence within the Guidelines range. The district court then notified the parties in writing that it "was considering [imposing] an above-guideline range." *Id.*, vol. III, at 14.

At her sentencing hearing on October 22, 2018, the Government recommended a 77-month sentence, at the low end of the 77–96 month Guidelines range calculated in the PIR. Over Ms. Aaron's renewed objection, the district court announced that it would depart upward from the Guidelines range and impose a greater sentence than the Government recommended.

Discussing the factors enumerated in 18 U.S.C. § 3553(a), the district court concluded, given that Ms. Aaron broke a display case, told conflicting stories about why she stole the firearms, and fled from the police, that "the nature and circumstances of her offense [are] quite serious." *Id.*, vol. III, at 27. The court further observed that Ms. Aaron's criminal history included "an incredible string, perhaps not of violent offenses, but still of disruption of the peace of the community with the number of theft and other offenses that she's had." *Id.* at 28. Despite expressing

4

sympathy for Ms. Aaron's addiction issues, the district court maintained that "[a]ddiction is disfavored as a grounds to consider a downward factor on a sentence, and . . . that's not just downward below the guideline but [also] in considering it in contravention to upward factors." *Id.* at 28–29. Considering options for rehabilitation, the court observed that Ms. Aaron had "not fully participated in" treatment options in the past. *Id.* at 29. The court also considered the "need to impose a sentence that protects the public from further crimes" by Ms. Aaron, noting:

> [F]rankly, this defendant is a rolling series of crimes. In her youthful age, she has scored an incredible number of crimes. And not disregarding the need to provide treatment to her, I also have to consider the need for protecting the public from the continued crimes that she's committing. And that's, I think, a serious factor, given how much criminality she's ranked [sic] up in what a short period of time. And those are the factors that have led me to really seriously consider an upward departure on her sentencing.

*Id.* at 29–30.

The district court then imposed a sentence of 110 months' imprisonment followed by a three-year term of supervised release, along with a "strong recommendation to the BOP . . . that [Ms. Aaron] be placed in a medical facility" for the duration of her sentence. *Id.*, vol. II, at 34, 36–38. Ms. Aaron timely appealed.

## II. DISCUSSION

U.S.S.G. § 4A1.3 allows an upward departure from the Guidelines' recommended sentence where "reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other

5

crimes." U.S.S.G. § 4A1.3(a)(1). In general, we review a district court's decision to depart from the Guidelines' recommended sentence for abuse of discretion. *Koon v. United States*, 518 U.S. 81, 100 (1996). When reviewing an upward departure, we consider four factors: "(1) whether the district court relied on permissible departure factors, (2) whether those factors removed a defendant from the applicable Guidelines heartland, (3) whether the record supports the district court's factual bases for a departure, and (4) whether the degree of departure is reasonable." *United States v. Robertson*, 568 F.3d 1203, 1211 (10th Cir. 2009).

We apply a "unitary abuse of discretion standard" to each of these four prongs, but in applying that standard, the degree of deference depends on the type of question presented on appeal. *United States v. Munoz-Tello*, 531 F.3d 1174, 1186 (10th Cir. 2008) (quotation marks omitted). "That is, if the question on appeal has the hue of a factual question, we accord the district court greater deference, whereas we undertake plenary review of questions that are in essence legal." *Id.*

Ms. Aaron raises four issues on appeal, corresponding to the four prongs of our upward-departure review: (1) whether the district court relied on impermissible departure factors; (2) whether the district court erred in finding Ms. Aaron's criminal history removed her from the applicable Guidelines heartland; (3) whether the record supports the district court's factual basis for an upward departure; and (4) whether the degree of departure was reasonable. We address each issue in turn, ultimately concluding that none entitles Ms. Aaron to relief.

### A.  Did the District Court Rely on Impermissible Departure Factors?

### 1.  Standard of Review

Because it is a question of law, we generally review whether a district court relied on impermissible departure factors de novo. *Id.* at 1188. Here, however, Ms. Aaron concedes she forfeited her argument by failing to raise it to the district court. "[W]hen an appellant raises a forfeited argument or issue for the first time on appeal, we will reverse only if the appellant can satisfy our rigorous test for plain error." *United States v. Johnson*, 732 F. App'x 638, 644–45 (10th Cir. 2018) (unpublished); *see also United States v. Kearn*, 863 F.3d 1299, 1305 (10th Cir. 2017).

To prevail on plain error, a defendant must show "(1) the district court committed error; (2) the error was plain—that is, it was obvious under current well-settled law; (3) the error affected the Defendant's substantial rights; and (4) the error seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *United States v. Gantt*, 679 F.3d 1240, 1246 (10th Cir. 2012) (internal quotation marks omitted). "Because all four requirements must be met, the failure of any one will foreclose relief and the others need not be addressed." *Id.*

### 2.  Analysis

The Government argues that because Ms. Aaron failed to argue plain error in her opening brief "this issue is waived, meaning [she] is not entitled to even plain-error review." Appellee's Br. at 13. Indeed, where an appellant fails to properly argue plain error on appeal, she is not entitled to plain error review. *See, e.g.*, *Johnson*, 732 F. App'x at 644. However, we have left open the possibility that a criminal defendant

could simply allege error in her opening brief, then argue the other three plain-error factors in her reply brief after the Government argues forfeiture. *United States v. MacKay*, 715 F.3d 807, 831 n.17 (10th Cir. 2013) ("An appellant certainly would benefit from a more developed argument if he acknowledged forfeiture in his opening brief, but we do not discount the possibility that we may consider a plain error argument made for the first time in an appellant's reply brief."); *see also United States v. Courtney*, 816 F.3d 681, 683 (10th Cir. 2016).

Here, Ms. Aaron failed to argue plain error in her opening brief. In her reply brief, despite acknowledging she had forfeited this argument below, Ms. Aaron argued only that the district court erred, and she never addressed the other three prongs of plain error. Therefore, even applying the lenient *MacKay* standard, she has waived plain error review.[1]

---

[1] Even if we reached the merits of Ms. Aaron's argument, the district court did not impermissibly rely on her age to depart upward from the Guidelines range. The district court mentioned Ms. Aaron's age simply to highlight the fact that she had accumulated an extensive criminal history in a short period of time. *See* ROA, vol. III, at 15 ("[O]bviously, 26 points itself would be grounds for an upward departure because it's double what category VI is. But the fact that she's done so many in such a youthful age further exacerbates that."). This interpretation of the district court's language at sentencing is further supported by the fact that the district court checked the box marked "Criminal History Inadequacy" in the Statement of Reasons for Departure, but did not check the box marked "Age" (or any other box). Such an approach is entirely permissible under the Guidelines. *See, e.g.*, *United States v. Collins*, 122 F.3d 1297, 1306 (10th Cir. 1997), *superseded by statute on other grounds as recognized in United States v. Andrews*, 76 F. App'x 244, 245 (10th Cir. 2003) (unpublished) (noting that "a district court may rely on offender characteristics such as age . . . only in combination with other circumstances of a defendant's criminal history"); U.S.S.G. § 4A1.3 cmt. background (2016) (describing "younger defendants . . . who are more likely

### B. Did the District Court Err in Finding That Ms. Aaron's Criminal History Removed Her From the Applicable Guidelines Heartland?

#### 1. Standard of Review

The parties dispute whether Ms. Aaron preserved this argument. Our review of Ms. Aaron's sentencing memorandum reflects she disputed the Probation Office's statement that an upward departure may be warranted by noting that Ms. Aaron "has never been arrested or convicted for a crime of violence or an offense involving the use of a firearm or weapon." *See* ROA, vol. II, at 48. Her attorney also argued at the sentencing hearing that Ms. Aaron's criminal history did not warrant an upward departure. Although the argument there focused on Ms. Aaron's drug addiction and mental health issues, Ms. Aaron's attorney did seek to distinguish her prior criminal offenses from the instant offense. *See id.*, vol. III, at 20 ("I don't see where she's ever been convicted of a crime of violence or any other offense involving the use of a firearm or weapon other than this theft."); *see also id.* (arguing Ms. Aaron was not "going around stealing as a true profession").

From these objections, we can fairly conclude Ms. Aaron attempted to distinguish her prior offenses from her instant offense. This suffices to preserve her argument on appeal that the district court improperly "lumped all of her relevant and irrelevant criminal conduct together." Aplt. Op. Br. at 24.

---

to have received repeated lenient treatment, yet who may actually pose a greater risk of serious recidivism than older defendants").

When applying our abuse-of-discretion standard to this prong, "[s]ubstantial deference is due the district court's determination that unique factors place a defendant outside of the Guidelines heartland." *Robertson*, 568 F.3d at 1213. Because we "[a]cknowledg[e] the district court's special ability to judge the 'ordinariness or unusualness of a particular case,'" *United States v. Osborne*, 593 F.3d 1149, 1155 (10th Cir. 2010) (quoting *Koon*, 518 U.S. at 98), we "limit our review to determining whether the factual circumstances from the vantage point of the district court make this the atypical case." *Robertson*, 568 F.3d at 1213 (internal quotation marks omitted); *see also Koon*, 518 U.S. at 98 (describing the district court's "institutional advantage" in making "these sorts of determinations").

## 2. Analysis

"The Guidelines encourage upward departure if reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes." *United States v. Akers*, 215 F.3d 1089, 1104 (10th Cir. 2000). Ms. Aaron claims the district court wrongly relied on her entire criminal history to support an upward departure, without determining whether her criminal history was sufficiently similar to her instant offense. She argues that "[a]n upward departure . . . is only befitting if a defendant's prior, adult, criminal conduct is sufficiently similar to that underlying the instant offense." *See Robertson*, 568 F.3d at 1213. While Ms. Aaron is correct that criminal history must be "sufficiently similar to [the

10

conduct] underlying the instant offense," the district court did not err in determining that her criminal history meets that threshold.

To remove a defendant from the Guidelines heartland, past criminal conduct need not be identical to the instant crime of conviction. Rather, it must simply be similar enough to suggest higher culpability or likelihood to recidivate than the typical case. *Id.* In *Robertson*, the only case relied upon by Ms. Aaron, the defendant was convicted of being a felon in possession of a firearm. *Id.* at 1207. His criminal history "began at age 14" and most of his "criminal convictions involved drugs or guns." *Id.* Relying primarily on prior criminal charges that the "Government [had] been] compelled to dismiss . . . because key prosecution witnesses [had] failed to appear,"[2] the district court imposed an above-guidelines sentence, reasoning that the defendant's criminal history removed him from the Guidelines heartland. *Id.* at 1208–09. On appeal, this court rejected the defendant's challenge to that conclusion, accepting the district court's reasoning that the "[d]efendant's unconvicted conduct involving firearms—some of it remarkably violent . . . giv[es] him greater culpability for being a felon in possession of a firearm than a defendant in the run-of-the-mill case." *Id.* at 1214. Thus, although the defendant had not before been charged with, or convicted of, the specific federal crime of being a felon in possession of a firearm, his history of crimes involving firearms and violence was sufficient to remove him

---

[2] These charges involved threatening people with firearms, shooting randomly at a house, and shooting at the occupants of a car. *See United States v. Robertson*, 568 F.3d 1203, 1207 (10th Cir. 2009).

11

from the Guidelines heartland. *Id.*; *see also United States v. Proffit*, 304 F.3d 1001, 1011–12 (10th Cir. 2002) (affirming district court's reliance on "[d]efendant's failure to pay any restitution or the special assessment, his passing of bad checks . . . and submission of false medical documentation in an attempt to delay sentencing" as sufficient "evidence [of his] potential for recidivism" to remove him from the heartland for mail fraud conviction).

Likewise, the district court here relied primarily on Ms. Aaron's extensive history of theft. Although the sentencing judge did note Ms. Aaron's sheer number of criminal history points, *see, e.g.*, ROA, vol. III, at 15, he also emphasized her recurring pattern of theft crimes and its impact on the community, *see id.* at 20 ("[S]he's made a criminal livelihood of theft and burglary."); *id.* at 28 (referring to "an incredible string, perhaps not of violent offenses, but still of disruption of the peace of the community with the number of theft and other offenses that she's had"); *id.* ("[T]here's no indication that she's developed a respect for the law, as in her youthful age she's just continued on repeated and repeated occasions to violate the peace of the community"); *see also* ROA, vol. II, at 51 (giving as a reason for upward departure "defendant's lack of respect for the law, extensive history of theft crimes in a short period of time, the instant offense involve[ing] the theft of firearms, a need to protect the community, and a high likelihood of recidivism").

Nonetheless, Ms. Aaron argues her prior "theft convictions were dissimilar from the present case" because one "involved two counts of auto theft," another "involved theft of purses and property from two churches," and on "two [other]

occasions, she stole purses from a locker at the YMCA." Aplt. Op. Br. at 25. But the fact that none of these past instances specifically involve the theft of *firearms* does not prevent the district court from considering them as evidence of her likelihood to recidivate.

To be sure, the district court must draw some connection between criminal history and the instant offense. And if the district court had merely "lumped all of [Ms. Aaron's] relevant and irrelevant criminal conduct together," *id.*, regardless of the connection between past criminal conduct and the instant offense, that probably would not have adequately suggested the elevated culpability or likelihood of recidivism needed to justify an upward departure. *See Robertson*, 568 F.3d at 1207– 08. But the district court did not, in fact, "lump all of" Ms. Aaron's criminal history together. *See* Aplt. Op. Br. at 25. Rather, it emphasized the likelihood of recidivism given that this crime—theft of firearms—followed on the heels of many past theft crimes driven by similar motives.

Ms. Aaron also argues the district court failed to consider as mitigating factors her mental illness and drug addiction. But although the court did not change its conclusion that Ms. Aaron fell outside the "heartland" of the Sentencing Guidelines, it did adequately consider these factors. First, the court accounted for Ms. Aaron's mental illness by recommending that she serve her sentence at a medical facility. Second, the district court considered Ms. Aaron's drug addiction and expressed sympathy for Ms. Aaron's addiction. But it ultimately concluded that "[a]ddiction is disfavored as a grounds to consider a downward factor on a sentence." ROA, vol. III,

13

at 28. That conclusion was correct. *See* U.S.S.G. § 5H1.4 ("Drug or alcohol dependence or abuse ordinarily is not a reason for a downward departure. Substance abuse is highly correlated to an increased propensity to commit crime."); *United States v. Ziegler*, 1 F.3d 1044, 1049 (10th Cir. 1993) (noting "the Sentencing Commission's desire not to reward drug dependency through departures").

In sum, the district court did not fail to consider Ms. Aaron's mental illness and drug addiction; rather, it "took into account *all* of the 3553(a) factors, including the seriousness of [her] offense, [her] repeated offenses, the need for adequate deterrence, and protecting the public from further crimes by [Ms. Aaron]." *United States v. Liner*, 365 F. App'x 150, 153 (10th Cir. 2010) (unpublished). Thus, the district court did not abuse its discretion in finding that Ms. Aaron's criminal history removed her from the Guidelines heartland.

### C. Does the Record Support the District Court's Factual Basis for an Upward Departure?

**1. Standard of Review**

Both parties agree Ms. Aaron preserved this issue for review. Where the issue is preserved, "[w]hether the record sufficiently supports the factual basis underlying the departure is a question we review for clear error." *United States v. Utley*, 62 F. App'x 833, 837 (10th Cir. 2003) (unpublished); *see also United States v. Maldonado-Campos*, 920 F.2d 714, 720 (10th Cir. 1990). If a fact is contested at the sentencing hearing, however, that fact must be established by a preponderance of the evidence. *United States v. Yates*, 22 F.3d 981, 989 (10th Cir. 1994).

14

**2. Analysis**

Ms. Aaron's argument on this point is brief and somewhat unclear. She makes two claims: (1) "the majority of the criminal history points" the district court relied upon "were not for convictions on charges of theft or related to any criminal livelihood"; and (2) "[t]he four theft convictions identified in the PIR arose during a 16-month period."[3] Aplt's Op. Br. at 26.

Her first point is unavailing. The fact that only fifteen of her criminal history points arose from theft-related crimes does not undermine the district court's conclusion that she had "an extensive history of theft crimes in a short period of time." ROA, vol. II, at 51. Nor does it compromise the court's conclusions about Ms. Aaron's recidivist tendencies.

As for her second point, Ms. Aaron never explains the significance of the fact that "four [of her] theft convictions . . . arose during a 16-month period." Aplt's Op. Br. at 26. And, as the Government observes, the record amply supports the district court's conclusion that repeated interventions from the criminal justice system have failed to deter Ms. Aaron from committing more crimes.

---

[3] It is not clear these issues properly fall under the third prong of our departure analysis. Ms. Aaron does not dispute "the factual accuracy of statements in the presentence report" or the sentencing hearing. *United States v. Warren*, 737 F.3d 1278, 1280 (10th Cir. 2013). That is, she never argues the arrests, charges, and convictions at issue did not take place, or that the district court mischaracterized how or when they took place. Rather, she challenges the district court's interpretation of the *significance* of those events. Thus, her "factual basis" arguments seem more like restatements of the arguments she makes under prong two. Nevertheless, we address these arguments' significance to the prong three analysis because that is how Ms. Aaron presented them.

Therefore, the district court did not err, let alone commit clear error, in its factual basis for an upward departure.

### D. Was the Degree of Upward Departure Reasonable?

**1. Standard of Review**

"In determining whether the degree of departure is reasonable . . . the appellate court should afford the trial court some discretion, as we should not lightly overturn determinations of the appropriate degree of departure." *United States v. Goldberg*, 295 F.3d 1133, 1138 (10th Cir. 2002) (internal quotation marks omitted). Furthermore, Ms. Aaron and the Government agree that this issue was not preserved below. Therefore, we review for plain error.

**2. Analysis**

Ms. Aaron argues the district court erred in determining the degree of its upward departure. "In calibrating the degree of departure, a district court must provide an explanation that does more than restate the justification for the upward departure." *United States v. Shores*, 45 F. App'x 854, 858 (10th Cir. 2002) (unpublished) (internal quotation marks omitted). The district court's explanation can rest on "any *reasonable methodology hitched to the Sentencing Guidelines*, including extrapolation from or analogy to the Guidelines." *Goldberg*, 295 F.3d at 1138 (quotation marks omitted). The district court may not, however, simply employ the language of the Guidelines to achieve its own desired results in sentencing. *See, e.g.*, *id.* at 1139–40 (holding district court erred in applying eight-step reduction where "it [was] apparent it chose a downward departure of eight levels because such a

departure was the minimum necessary to render the defendant eligible for a sentence that did not involve incarceration"). Likewise, the district court's methodology may not be arbitrary. *See United States v. Walker*, 284 F.3d 1169, 1173 (10th Cir. 2002) (rejecting district court's rationale for seven-level upward departure where "the district court decided to depart one offense level for each of Defendant's seven prior convictions in excess of those needed to accumulate the criminal history points required for his placement in criminal history category VI").

As Ms. Aaron observes, the Sentencing Guidelines prescribe a method for district courts to follow when departing upward in category VI cases:

> In a case in which the court determines that the extent and nature of the defendant's criminal history, taken together, are sufficient to warrant an upward departure from Criminal History Category VI, the court should structure the departure by moving incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until it finds a guideline range appropriate to the case.

U.S.S.G. § 4A1.3(a)(4)(B).

Here, the district court explained its reasoning for the two-level departure as follows:

> Well, I [have a copy of the sentencing table] and if I went up—she's 21-VI. If I went up to 22-VI, the range would be 84 to 105 [months], and 23-VI would be 92 to 115. Given that she has double the criminal history points necessary to get to a category VI, if I followed that approach I don't think a mere adjustment of a[n] offense level of one level would be sufficient. And if I did even just two levels, my proposed sentence is within that guideline range of 92 to 115.

ROA, vol. III, at 35.[4] Thus, the district court followed the procedure described in U.S.S.G. § 4A1.3(a)(4)(B): it moved up one offense level, determined the resulting guideline range was still inappropriate given the factors previously discussed, then moved up another offense level, and determined the resulting guideline range was appropriate.

The substance of the district court's explanation for moving up a second offense level—"[g]iven that she has double the criminal history points necessary to get to a category VI, . . . I don't think a mere adjustment of . . . one level would be sufficient"—is adequate. *Id.* It "expressly articulate[s] . . . the logical foundation for the degree of departure selected." *United States v. Begaye*, 635 F.3d 456, 470 (10th Cir. 2011) (quotation marks omitted). The district court considered Ms. Aaron's criminal history sufficiently in excess of a "heartland" case that a one-level departure would not adequately reflect it, but a two-level departure would. In addition, the district court's extensive explanation of the seriousness of Ms. Aaron's criminal history lends some additional weight to the court's choice to depart by two levels, rather than just one. *See, e.g.*, *United States v. Martinez*, 418 F.3d 1130, 1134 (10th Cir. 2005) (affirming district court's explanation where the "degree of departure also advance[d] the goals of deterrence and protecting the public"); *see also United States*

---

[4] The district court originally announced only "a sentence that includes an upward variance of 110 months' incarceration," citing only Ms. Aaron's "long string of criminality," the statutory maximum of 120 months, and "the inadequacy of the criminal history characterization." ROA, vol. III, at 30–31. Ms. Aaron's counsel pointed out the commentary to U.S.S.G. § 4A1.3 later in the sentencing hearing, and the district court then explained its sentence as the result of a two-step departure.

*v. McGowan*, 6 F. App'x 806, 810 (10th Cir. 2001) (unpublished) (noting "the district court is not required to justify the degree of departure with mathematical precision").

Although the district court's explanation of its two-level departure could have been more detailed, it followed the Guidelines' prescribed method for determining the degree of departure and was grounded in relevant facts. Therefore, the district court did not abuse its discretion in calculating the degree of departure from the Guidelines' range.

Because Ms. Aaron has failed to establish the first prong of plain error review—error—her claim fails.[5]

## II.     CONCLUSION

We AFFIRM the sentence imposed by the district court.

Entered for the Court


Carolyn B. McHugh
Circuit Judge

---

[5] Even if Ms. Aaron could establish error, she cannot show that such error was plain. *See United States v. Garcia-Damian*, 702 F. App'x 743, 746 (10th Cir. 2017) (unpublished) (holding district court's explanation of degree of departure, although incomplete, was not plain error). Nor is there any indication that the alleged error affected Ms. Aaron's substantial rights because Ms. Aaron has not shown "that the district court's failure to elaborate on its reasoning impacted the outcome of [her] sentencing and therefore affected [her] substantial rights." *United States v. Gamez-Tapia*, 501 F. App'x 780, 782–83 (10th Cir. 2012) (unpublished); *see also Begaye*, 635 F.3d at 471 (rejecting defendant's challenge on plain-error review where defendant "fail[ed] to advance any argument as to how this error affected his sentence, and thus utterly fails to carry his burden"). Finally, Ms. Aaron advances no argument on whether any error in explaining the degree of upward departure "affect[s] . . . the fairness, integrity, or public reputation of judicial proceedings." *United States v. Ruiz-Terrazas*, 477 F.3d 1196, 1203 (10th Cir. 2007).